UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TOM WILSON,<br><br>        Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of<br>Social Security Administration,<br><br>        Defendant. | CASE NO.   **C05-5734FDB**<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for January 19, 2006 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

### INTRODUCTION

Plaintiff, Tom Wilson, was born in 1961, and he attended High School through the 9th grade. He has work experience as a small parts assembler, concrete truck driver, and construction worker. He last worked in 1997 as a roofer. He has not worked since December 28, 1997, when he injured his back and neck when a ladder he was standing on collapsed and he fell. He attended Lower Columbia Community College for graphic design following his accident, but he did not complete the program.

Plaintiff filed a claim or application for Title II disability benefits and Supplemental Security Income benefits on January 30, 2003. His claims were initially denied and upon reconsideration. Plaintiff filed a

Request for Hearing by Administrative Law Judge ("ALJ") and the hearing was held on June 23, 2005. The ALJ issued his decision on July 26, 2005, denying the applications. Plaintiff timely filed a request for Review of Hearing Decision/Order with the Social Security Appeals Council, but on October 31, 2005, the Appeals Council ruled against the Plaintiff. The ALJ's decision became the final administrative decision.

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920. At step-one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (Tr. 16, 24 Finding 2). At step-two, the ALJ found that Plaintiff established the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy; degenerative disc disease of the thoracic spine post fusion surgery; and lumbar radiculopathy (Tr. 17, 24 Finding 3). At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not satisfy the Listings (Tr. 17, 24 Finding 4). The ALJ determined that Plaintiff retained the following residual functional capacity (RFC): lift 20 pounds occasionally, 10 pounds frequently; option to sit/stand at will; no frequent overhead reaching or pushing/pulling with the upper extremities; occasional climb, balance, stoop, kneel, crouch, and crawl; simple 1 to 3 step tasks, due to possible pain and side effects of medication (Tr. 23, 25 Finding 6). At step-four, the ALJ found that Plaintiff could still perform his past work as a light assembler (Tr. 23, 25 Finding 7). In the alternative, at step five, relying upon vocational expert testimony, the ALJ found that a person with Plaintiff's RFC and vocational profile could perform a significant number of jobs in the national economy, represented by: assembler (619,000 jobs nationally, 14,500 jobs statewide); electronics worker (450,000 jobs nationally, 10,500 jobs statewide); cashier II (3,500,000 jobs nationally, 30,000 jobs statewide); and counter clerk (435,000 jobs nationally, 6,000 statewide). The ALJ thus found Plaintiff capable of performing a significant number of jobs in the national economy and not disabled (Tr. 24, 25-26 Findings 12, 13, and 14).

Plaintiff filed a Complaint with the Court challenging the denial of his applications for benefits on November 11, 2005. Plaintiff specifically argues the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's subjective pain complaints, and for this reason, the Court should reverse the administrative decision and award benefits. Defendant contends the ALJ applied the proper legal standards and that the administrative findings and conclusions were properly supported by substantial evidence.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

<u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. <u>Bunnell</u> requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" <u>Id</u>. at 345-46 (quoting <u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in <u>Fair v. Bowen</u>, *supra*, and <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.

Here, Plaintiff states the ALJ found only two reasons to reject Plaitniff's allegations of pain and limitations, and Plaintiff argues these two reasons are not clear and convincing. After reviewing the record, the court is not persuaded by Plaintiff's argument. The ALJ's decision is properly supported by substantial evidence in the record and the reasons supporting the ALJ's analysis are clear and convincing.

The ALJ specifically addressed Plaintiff's credibility in his conclusions, stating, "The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible for the reasons stated in the body of the decision" (Tr. 24). In the body of his decision, the ALJ first summarized the medical evidence and then addressed Plaintiff's allegations and testimony. The ALJ stated:

> In reviewing the claimant's allegations and testimony, I find his allegations only partially credible. While the claimant's impairments can be expected to result in some pain and

REPORT AND RECOMMENDATION
Page - 3

limitation in range of motion, they are not of a severity to prevent all work activity. The opinion of treating and examining physicians are not supportive of the claimant's claims of total disability. Prior to the claimant's thoracic spine surgery in March 2000 treating physician Vern W. Harpole, M.D., released the claimant to modified work involving minimal stooping, twisting, bending; minimal pushing or pulling over 20 pounds; and minimal repetitive lifting over 20 pounds. (Exhibit 16F/186 and 189). Dr. Harpole reported in October 2000 that he had been released to work with permanent restrictions of no lifting repetitively over 25 pounds. (Exhibit 16F/172). In August 2002, Dr. Harpole reported there was no change in his restrictions and encouraged the claimant to continue with vocational training in September 2002. (Exhibit 16F/176-177). In addition, Disability Determination Services medical consultants have opined that the claimant can perform a modified range of light exertion work activity with postural limitations and limitations in the use of his upper extremities. (Exhibit 1F and 2F).

The medical records do not support the claimant's allegations of disabling pain and reflect functional ability inconsistent with an inability to perform all work activity. In June 1999, the claimant reported shoulder pain after helping to rebuild and paint a fence in his yard. Dr. Harpole reported the claimant was "quite well-muscled with good muscle tone and posture". He reported there was no pain behavior objectively observed, although he continued to complain of myriad aches and pains. (Exhibit 16F/163). In July 2000, Dr. Harpole encouraged the claimant to start thinking about returning to work as he recovered from spine surgery. (Exhibit 16F/169). In September 2000, the claimant reported he was "pretty much pain-free at night" but had pain at the surgery site at the end of the day. On physical examination, he had good range of motion in the cervical and lumbar spine. (Exhibit 16F/171). In January 2001, the claimant reported that although he wakes up sore, he is able to perform activities of daily living in addition to performing simple work in his shop for about three to four hours. Dr. Harpole reported the claimant was "quite functional now and needs to return to work." (Exhibit 16F/172). In March 2001, the claimant reported he was maintaining his level of activity with 10 mg OxyContin twice daily, 100 mg trazodone at bedtime and Motrin as needed. He reported good days and bad days. However, he acknowledged that he was sleeping without difficulty, he "essentially has no restrictions in his activity secondary to pain", and was voluntarily limiting his lifting to no more than 30 to 40 pounds. (Exhibit 16F/174). The claimant reported in July 2001 that although he was nearly bedridden while off medication, his medication allowed him to be "quite functional" with "absolutely no impairment". He reported he was looking forward to starting vocational training and was able to sleep, perform activities around the house, help his wife with ceramics and mow the lawn. He reported he was able sit and work at the computer for one to two hours at a time. (Exhibit 16F/174).

The claimant has complained of abdominal pain. However, Dr. Harpole reported that he would have to "learn to live with his pain". He also noted that abdominal ultrasound performed in August 2002 was "completely normal". (Exhibit 16F!176, 178). Claimant has requested by letter of July 19, 2005, that the record be held open for a recent ultrasound. That request is denied as the evidence of record suggests the abdominal problems are not a severe impairment and are generally controlled with medication.

While Dr. Leininger opined in January 2003 that the claimant had evidence of C7 radicular pain possibly due to cervical spondylosis or disc herniation, the September 2004 cervical spine MRI revealed no abnormality at that level. (Exhibits 1 7F/1 99 and 20F1267). On physical examination performed by Dr. Leininger in April 2003, it was reported that the claimant appeared comfortable sitting on the exam table and gait and station were normal. The claimant was prescribed pain medication for chronic upper back pain. Dr. Leininger recommended increasing his activity and physical therapy. (Exhibit 17F/205). In January 2005, it was reported that the claimant's functional ability was minimal. However, it was reported that although the claimant complained of chronic left-sided trunk pain radiating into his left arm, his MRI reflected nothing "to explain his left upper limb symptoms well."

It was opined that his pain was under treated.. (Exhibit 19F/258). Medical records dated February 14, 2005, reveal the claimant reported an ability to walk for one hour and perform such activities as clearing brush from his property. (Exhibit 19F/261). Medical records dated March 16, 2005, reveal the claimant stays active working on rental property, although he reported that using a push mower results in neck pain mud severe headaches. However, he reported his belief that he was capable of using a sitting lawn mower without these problems. Although the claimant reported pain at 8/10, he had not received his prescription of OxyContin. (Exhibit 19F/263). On both dates, the claimant was described as alert, oriented, in no acute distress, not sedated, somnolent, or ataxic and walking without difficulty. At the hearing, the claimant acknowledged performing some work activity in March 2005 such as mowing the lawn and ensuring that tenants pay rent.

The record also contains evidence that the claimant is over-focused on pain and has exaggerated his pain complaints. The records reveals that he was admitted for pain center treatment for two weeks in December 1998. However, he stated that he intended to participate in no physical activity because he expected that it would result in increased pain. At discharge it was reported that the claimant "had participated so minimally in physical therapy activities that no significant changes were made." (Exhibit 6F/29). The claimant exhibited positive Waddell's signs during examination in December 1998, suggesting a non-organic source of his complaints of pain. While it was not concluded that the claimant was malingering, it was determined that there was a psychological component to his pain complaints. (Exhibit 5F/25-26). After an independent medical examination performed in February 1999, it was opined that the claimant demonstrated "significant pain magnification" based on all Waddell's signs being positive. (Exhibit 8F/3 8). At that time it was also noted by another physician that when the claimant was distracted, he was less limited. (Exhibit 7F/32). In January 2001, Dr. Harpole reported, "[A]s I predict, this patient is going to be extremely difficulty [sic] to get back to work with his somatizing personality and anxiety. I am afraid we are going to be fraught with lots of pain problems". (Exhibit 16F/l73). The above suggests that the claimant's complaints of pain cannot be taken at face value, and, the psychological testing does not support a pain disorder.

In addition, his efforts at vocational rehabilitation suggest he considered himself capable of performing some types of work activity. He testified he attended community college in a graphic design program with vocational retraining funding for one and one-half years. He stated he took math and graphic design courses and used a computer design program. He stated his cumulative grade point average was 3.25. While he testified that he did not complete that training because of lack of funding, information contained in medical records suggest that other factors are at play. He told his doctor in April 2003 that "[h]e did a vocational retraining program but never finished his math class so therefore cannot get a job and cannot afford to finish his schooling". (Exhibit 17F/206).

The claimant reported engaging in activities such as playing guitar one to three times per day for one-half hour at a time, attending church two to three times per week, visiting friends one to three times per week for one to four hours at a time, reading three to four hours per day, accompanying his wife to shop for groceries, mowing the lawn, and driving for periods of up to one-half hour. (Exhibits 2E/7-8, 6E, 12E). The ability to perform such activities is inconsistent with an inability to perform any type of work activity.

The claimant's credibility is further reduced by inconsistencies in his statements. He claims to have worked consistently since his teenage years. He testified at the hearing that all his income was reported and he worked as a self-employed roofer at one time. However, perusal of his earnings record reveals he has at best a modest earnings history. He reported self-employment earnings of only $1,245 through Wilson's Roofing Company in1984. (Exhibit 5D/17). In his last 12 years of work he earned over $10,000 in only four years. He earned well under $10,000 in the remainder of the 12 years and no earnings were reported in 1992. (Exhibit 4D). He later acknowledged that he was unemployed much of the time.

REPORT AND RECOMMENDATION
Page - 5

> The claimant has not worked since his work injury in 1997, apparently living off his workers' compensation settlement. He has since attempted to obtain additional workers' compensation for his cervical spine problems. However, in September 2002 treating physician Vern Harpole, M.D., opined that the claimant's neck problems were related to pre-existing arthritis and not to any work injury. Dr. Harpole reported, "[P]atient was extremely unhappy with my opinion and is going to get a lawyer and fight this and get the cervical spine problem to be allowed." (Exhibit 16F/l77). Although workers' compensation covered some vocational re-training in graphic design, he did not complete that training. The above and the evidence of record as a whole suggest that the claimant has demonstrated little motivation to work. I note that he testified he owes $16,000 in Child support payments. Moreover, he clearly has an interest in obtaining Social Security disability benefits since they would exceed what he has earned most of his adult life.
>
> Given all the above, I find the claimant's allegations of disabling pain and other limitations are excessive and not fully credible.
>
> In assessing the claimant's credibility, I have considered and given little weight to the January 28, 2004, statement of social worker Robyn Green. (Exhibit 9E). I find her statement to be generally credible to the extent she reports her observations of the behaviors the claimant demonstrates. However, the information provided by witnesses is considered in conjunction with the objective medical record, findings, assessments, etc. There is no indication that Ms. Green saw the claimant on more than one occasion. Her observation that the claimant was uncomfortable sitting and limped is inconsistent with medical records which reflect that the claimant sits comfortably on the exam table and demonstrates normal gait and station. (Exhibits 17F/205 and 19F/261, 263). Because there is no indication that Ms. Green has been trained as a medical professional, her opinions that the claimant exhibited "pain behavior that was not exaggerated" and seemed to be "severely limited physically"' are out of the range of her expertise as a social worker. While it is accepted that observations of Ms. Green, such as her report that the claimant did not move his arm much, reflect a diminished capacity they are not conclusive of disability.
>
> I have further considered material provided after the hearing consisting of medical records from Peace Health Medical Center from February-June 2005. These records report a continuation of the basic complaints present in the earlier records with some better control of symptoms as medications are changed. He continues to complain of pain at a high level, however, his presentation and exam are relatively benign.
>
> Based on all the evidence of record and extending as much credibility to the claimant as possible, I find the claimant retains the residual functional capacity to lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally. He must have the option to sit or stand at will. He is limited to work which requires no frequent overhead reaching or pushing/pulling with the upper extremities. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. In addition, because of possible pain and side effects of medication, he is limited to work involving simple, one- to three-step tasks.

(Tr. 19-23). The court notes the ALJ's lengthy and detailed explanation contains several legitimate reasons to discredit Plaintiff's pain complaints. After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided legally sufficient evidence to discredit the Plaintiff's allegations of total disability. Accordingly, the ALJ properly discredited plaintiff's testimony and allegations suggesting total disability.

REPORT AND RECOMMENDATION
Page - 6

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 19, 2007**, as noted in the caption.

DATED this 26th day of December, 2006.

                            */s/ J. Kelley Arnold*
                            J. Kelley Arnold
                            U.S. Magistrate Judge